Housekeeping matter. Justice Turner is having a little bit of illness as we speak, but our arguments are piped into the back, so he's listening to them in the back. He's not going to be out here. This is Carter v. Carter. For the appellant, Ms. Pavlik, and for the appellee, Mr. Stewart, Ms. Pavlik, you may proceed. May it please the Court. The facts of this case are that the plaintiff's grandfather established a trust in 1986 for their benefit. The plaintiff's father, who is the defendant in this case, was the trustee. The trust was to last until the youngest child reached 21 years of age, at which time it was to terminate and be distributed to the beneficiaries outright. Those beneficiaries are the four children of the defendant, two of whom are the plaintiffs. The trust contained a spendthrift clause prohibiting the voluntary or involuntary alienation of the beneficiary's interest in the trust. It specifically stated this applied to both income and principal and to all interests held in the trust by the beneficiaries. The defendant, who is the father of the plaintiffs and the trustee, presented to the plaintiffs, each of them on a separate occasion, a deed whereby they transferred all of their interest in the trust to him individually, he being the trustee. It is our position that plaintiff Jennifer Carter Bernal's transfer to the trustee is invalid because of the spendthrift clause contained in the trust agreement. Her assignment was executed in 2002. The trust did not terminate under its terms until 2005. Therefore, during the existence of the trust, no interest could be assigned to anyone, either voluntarily or involuntarily by either plaintiff. Second of all, we have a claim for breach of fiduciary duty against the trustee. The trustee accepted the trust property in 1986. During the entire period of the trust, as outlined in the trial transcript, from 1986 until 2005, the trustee did not take any actions whatsoever for the benefit of the beneficiaries. The trustee did not segregate the trust property, the trustee did not account for trust income, the trustee did not file tax returns, the trustee made no distributions to the beneficiaries, and the trustee used the trust property for the exclusive benefit of himself. As outlined in the trial transcript, he conducted businesses on the trust property, including riding stables, hay rides, a saw mill. He constructed a home on the trust property while the property was owned by the trust. He proceeded to live in that house, sometimes with the trust beneficiaries, but other times solely by himself. He stated repeatedly in testimony that he could and did use the trust property for any reason whatsoever that he wished, and that he did not, in fact, owe any duties to the beneficiaries for that trust property. When he approached the beneficiaries to transfer their interest to him individually, he did so at a time when each beneficiary was under economic duress. Plaintiff Jennifer Carter Bernal had no money and nowhere to live. The plaintiff purchased a home and allowed her to live there. However, he purchased it in both of their names and demanded that she repay that amount to him as a loan. In addition, he stated in the trial transcript that he did not consider that consideration for her transfer of the trust interest back to him. Defendant John Robert Carter, when he signed his assignment back to the trustee, he had no financial assets and was in desperate need of a car. His father, the trustee, at that time co-signed a loan for him for the amount of $5,000. Again, the trustee stated that was not consideration for the assignment of the interest back to him. The trustee ended up repossessing the car, leaving John Carter with no benefit whatsoever from the alleged consideration to him for the assignment. The issues are simple. There's a lot of discussion in the briefs regarding whether the beneficiaries' interests are vested or remainder. None of that really are vested or contingent. None of that is relevant because the spendthrift clause overrides that issue. There is one case that the defendant cited regarding this, which is Crowley v. Engle. That case is not applicable to this matter because there was not a contingent remainder interest in that case because it did not have a survival requirement as we have in the Carter Trust. The defendant argues that because the trust property essentially still existed upon the termination of the trust, that he did not in fact breach his fiduciary duties to the beneficiaries. He argues that he did not waste the property or sell the property and therefore he fulfilled his duties to the beneficiary. Meanwhile, as I've stated, he took no actions whatsoever during the approximate 20-year existence of the trust to benefit or provide for the beneficiaries and ultimately persuaded them under economic duress to take the property back for himself, which he believed was his right. Anything further? Any questions? Mr. Stewart? If it pleases the Court, I believe this case is a lot more complex than has been presented. There are some basic outlines to this case. However, I don't accept the statements of fact or comments in regard to testimony that have been made by opposing counsel. First, it does pertain to a Spendthrift Trust. It is clear that it pertains to a Spendthrift Trust. The order of the trial court, however, found that there were two different elements within this trust. One was the income rights or discretionary distribution rights of the beneficiaries during the term of the trust. Most Spendthrift Trusts that we see do not run for a term of years. They normally run for the life of an individual or a beneficiary. So there was one aspect of the trust, what Spendthrift Trusts are all set up for, and that is the protection of the assets for the ultimate beneficiary's needs during the term of the trust. No one can alienate, no creditor can reach into the trust during the existence of the trust and compel the trustee to distribute income and or principal out of that trust during its term. But there is a second element to this trust. And Illinois courts have acknowledged this second element, and Judge Zappa acknowledged this, and that is the remainder interest in this trust. So you have the term of the trust and the inviolability of that trust and its assets during its term, but then you have a clear right of individuals in a remainder interest. And yes, the Illinois courts have struggled over the years and they have come up with a definition of vested remainder versus contingent remainder, and Crowley was a case that dealt strictly with vested remainders. But clearly it acknowledged that the right of a remainderman did exist to alienate or transfer that remainder interest even during the term of the trust. It was not prevented by virtue of the spendthrift laws. And there are numerous cases which we have cited, such as Kenney and Drury, Robeson and Kenwood, that deal with contingent remainders and the ability acknowledged by the courts for a holder of a contingent remainder to alienate or transfer that interest. So we are dealing with two different interests, one during the term of the trust and the remainder interest. It is our position and the trial court found that that remainder interest, once Jennifer Carter Bernal was of age, could be alienated and assigned by her. The evidence clearly shows that on the day that she received that, the $60,000 house that was placed in joint tenancy between herself and her father, who was the trustee, she signed that document. The testimony goes, even though Mr. Carter, the trustee and father, is not very sophisticated and he responded as to, I didn't receive consideration, when you looked at the entire record and the trial court being the finder of fact, I believe found that that conveyance of the house and turning over possession of that house two years before the termination of the trust was consideration. There was actual consideration for obtaining the quit claim and assignment. Well, but wasn't it also a requirement that the daughter pay her father back? I mean, basically, he could all buy you the house, but you've got to pay me for it? In the seven years since then, the testimony goes and is in the record that no payments, Jennifer Carter Bernal said she made no payments to her father in the seven years subsequent to that. She did not deed the property back. She accepted the full rights, and she is stopped from arguing the validity and effectiveness of that quit claim. And I believe Kenwood, which is cited to the court, does go to the effect of estoppel once you sign that document. I believe the trier of fact, the judge in the trial court, made an independent decision weighing the testimony of all the parties and all the witnesses that the value was, in fact, for full value of her interest, Jennifer's interest. Here it was two years prior to the end of the termination of the trust, and she is receiving a house for which she made no payments. There are all sorts of discrepancies and challenges to the one appraiser's dollar figures, very tasked figures, from the court and from counsel. Number one, and this was an appraiser secured by the plaintiffs. Number one, the appraiser fixed roughly a $500,000 valuation on the total track, both the residence and all the remaining property, based on an assumption, an incorrect assumption as determined by the court in questioning, that there was unlimited permanent access to the property, which would give you access 24 hours a day, 365 days a year. This property is adjacent to the river, Sangamon River, and floods. And 70% of the ground is oftentimes for extended periods of time underwater. The only access into the property of a permanent nature goes right through that flood area. So the appraiser's assumption was totally incorrect, and the valuation affixed was challenged. Can I ask a question before we get too far? Who currently owns the $60,000 house? Okay, let me correct it. Okay, the appraiser indicated that when the trust was funded, Ed Carter, as trustee, out of his own funds, built a sawmill and other commercial buildings. And the $60,000 that the appraiser used was the enhanced value of the property by virtue of those commercial improvements. The residential piece of property was appraised by the same appraiser in a divorce proceeding for over $220,000. I think you misunderstood my question. I'm asking about Jennifer Carter's house. Oh, I'm sorry. I'm sorry. Who owns that currently? It is currently, it was taken out of joint tenancy. It was placed originally in joint tenancy. With her and her father? Between Jennifer Bernal and Ed Carter. When Jennifer Carter Bernal filed this litigation, the general litigation, the next step was the father recorded a quit-claim deed which severed the joint tenancy. So the title currently stands, an undivided one-half in Jennifer Carter Bernal and an undivided one-half as tenants-in-common in Ed Carter. And Jennifer Carter Bernal continues, she has never made a payment to Ed Carter. There is no testimony in the record to reflect that at the time of the transfer, Jennifer had no funds and no place to live. That's not in the trial transcript that I'm aware of. There is no testimony that I can recall that I am aware of that a similar status was there for John Robert. The trial court once again heard all the evidence. The trial court made a determination that John Robert and Jennifer received full and adequate consideration for their transfers. The appraiser made some interesting comments and I think it's important for the court to know. In 1986, when the property was funded into the trust, it was non-income producing property. And when the appraiser went back out, even though there are businesses being operated on there, he made a determination that it's still non-income producing property. The best, highest use is for recreational purposes and that's non-income producing. Interesting comment, he did not value it. There is no testimony within the record which establishes any proof of damages. There is absolutely none. They are alleging the validity of the quitclaim deed and assignment, but they're also, they filed a claim on breach of fiduciary duty. Now yes, my client did not file separate tax returns. He's not a sophisticated individual. He filed them on business and he filed them personally. But remember that the property was non-income producing when he started. Every improvement that was placed on that property was courtesy of the funds of Ed Carter. It was not the funds of the beneficiary. The trust itself prohibited any transfer of the real estate that was the corpus of the trust. The trust prohibited any mortgage of that real estate. The trustee maintained that. He held the fiduciary obligation and the real estate was never transferred out of that trust. It's interesting to note that the trustee had personally paid $40,000 to his parents in order to acquire this ground before he put it into the trust. You say he put it into the trust. I thought his father transferred it into the trust. No. When you look at all the documentation, you find that there was a separate purchase and sale agreement between Luke and Mildred Carter and Edward Carter for $40,000. That was held through the Land of Lincoln Trust, Land Trust. He paid that off and the testimony is in the record that he paid that off. So whether it was legal title or equitable title, at that point in time, in 1986, Edward Carter owned that ground. Now, I believe mistakenly, it was drafted, the trust was drafted that the settlors, Luke and Mildred Carter, were the ones funding it or setting up the trust. But the actual funding came from Edward Carter. It's an automatic conflict situation and contemplated conflict from the standpoint that here you have Ed Carter who's deeding his own ground into the trust. The beneficiaries are his children and he is given discretion to use the assets of the trust for their support. The testimony is they never requested and their mother never requested support requirements from him. And they never testified to the effect that they did not receive support from him. No damages. But does that allow the trustee to use the trust property for his own benefit? Here you have Ed Carter who put roughly $70,000 into a house of his own money on this property. He provided shelter, it was a marital residence, so the children resided there along with his wife. Now isn't that a benefit to the beneficiaries? I think it is a significant one. It may be. Maybe he gave a gift of it to the trust. But all I'm saying is, it seems to me, when you're the trustee, you have a fiduciary obligation to the beneficiaries of the trust. And it seemed to me, from what I've read in this case, that he did not treat this as if the property was even in a trust. He treated it as if it was his own. In fact, in his testimony, didn't he testify he could do whatever he wanted with it except sell it or mortgage it? I acknowledge that he is not a sophisticated individual. I acknowledge the statements that he made in open court. But when you examine the full content of all the evidence, I believe that the only asset within that trust was the bare real estate. Now he made improvements. He put $200,000 worth of residence on that property. Is it a fixture attached to the real estate? It is an improvement and attached to the real estate. Likewise, he enhanced the value of the remaining property by over $60,000 of improvements. But he also provided a place of employment for his children who worked there on that property, as John Robert did. There is absolutely no proof that has been offered that any profit whatsoever was generated by Ed Carter. It's a claim for breach of fiduciary duty. Yes, there is a duty, but there has been no specific loss claimed and established in court by the plaintiffs. No monetary figure. Their appraiser, who could have established a reasonable rate of rent, could have, did not. He said it's non-income producing property. There is absolutely no evidence of any economic loss to the plaintiffs. And yet the trustee provided shelter, provided employment, and for that reason we believe that the trial court's order should stand as being affirmed. Thank you. Ms. Tavet, you go. First, regarding the Spencer of Trust issue, counsel stated I believe that these were not typical Spencer of Trusts and that they did not last for the lifetime of the beneficiaries. Obviously, there is no evidence that we can provide you about what a typical Spencer of Trust is. However, it is extremely common for testators or trust settlers to create a trust for beneficiaries until a certain date, such as a 25th birthday or a 30th birthday. That is an extremely common technique. The purpose of the Spencer of Trust is to protect the beneficiaries more or less from themselves during that time period. That means they cannot assign any interest in the trust, whether then or in the future, during the term of the trust. And obviously that has to be the case because otherwise the beneficiaries would not have the protection of the trust. If they could turn around and sell their trust interest at any time during the trust, number one, they would get almost no consideration for it because it's a future interest, and in this case a contingent future interest. And number two, it would provide no protection from their improvidence. Could John Carter go and sell his interest to someone on the street for some drug money or car money? No. If John Carter had purported to sell his interest in the trust to a third party, his father would be in here vehemently arguing that the Spendthrift Clause prohibited that assignment during the term of the trust. Spendthrift Trusts have long been honored by Illinois courts, as well as courts in all states in this country, except Louisiana, obviously with the Civil Law. The ruling that the defendant is asking for in this case is a complete undermining of the entire concept of Spendthrift Trusts, and would be the first case of its type in Illinois and in the country of which I am aware. Going on to damages, the damages that the plaintiffs have suffered is that they are not owners of half of the property. That is clearly what they were entitled to under the terms of the trust agreement, and they do not now own one half of the property. As far as the profits or income generated by the property, we do not have that information because the trial court did not require the defendant to account for all of the trust activity during the time period. And that's one of the things we are still asking for, is a complete accounting of all activity of the property during the term of the trust and since its termination in 2005. Regarding the $60,000 home supposedly being a consideration to Jennifer Carter, it was originally titled as joint tenants. It was never given to her in its entirety. And the defendant has filed a partition action in Sangamon County to force a sale of the property so he can take his half back. So regarding any gift or long-term rights in that property, she was never given an entire interest in that property. As far as the defendant providing different things to the beneficiaries during the term of the trust, as far as shelter and employment, he is their father. He is required under the law to provide a minimum level of support, at least until the age of 18. And he has a moral obligation to provide for them as well. So to say that he provided a roof over their heads is hardly saying that as trustee he provided any benefit to them from the trust property. As for his putting money into the property, he chose to do that. He knew the property was owned by the trust. And whether or not he wants to say that he in reality owned the property, the trust was transferred from his parents into the trust and he signed off on that as trustee. The trust document states that he signed it. To go back now and say that in reality that is not how it was funded is unacceptable. That's how it was funded and he accepted that at the time and for the next 20 years. Whether or not this was done as just a sham to protect the property from his creditors is not a legitimate legal argument to present to the court. As far as the cases that Mr. Stewart has cited regarding the assignment of these remainder interests, three of the four cases he cites did not even have a trust, much less a Spencer clause. They were life estates with vested remainder interests. They are completely irrelevant to the concept of the Spencer clause. In the one case that did include a trust, it was held that the creditor could not attach the contingent remainder interest. So none of the cases he cited as supporting his proposition are either relevant or support his position. I have nothing further. Thank you counsel. This case will be submitted for disposition.